IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


JUDITH A. HOOD                                                                PLAINTIFF

        v.                                      CIVIL NO. 09-4073

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                    DEFENDANT

## MEMORANDUM OPINION

        Plaintiff, Judith A. Hood, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claims for a period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI

of the Social Security Act (Act).  In this judicial review, the Court must determine whether there

is substantial evidence in the administrative record to support the Commissioner's decision.  See

42 U.S.C. § 405(g).

## I.    Background:

        Plaintiff protectively filed her current applications for DIB and SSI on September 24,

2007, alleging an inability to work since September 23, 2007,[1] due to degenerative bone disease

in the back and neck; arthritis; bad knees; gout; and carpal tunnel of the left wrist. (Tr. 113, 117,

145).  An administrative video hearing was held on April 21, 2009, at which Plaintiff appeared

with counsel and testified. (Tr. 9-41).   A vocational and a medical expert also testified at this

hearing.

_____

[1]Plaintiff, through her counsel, amended her alleged onset date to November 1, 2006. (Tr. 15).

By written decision dated May 19, 2009, the ALJ found that during the relevant time period Plaintiff had an impairment or combination of impairments that were severe. (Tr. 51-52). Specifically, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; and an adjustment disorder. However, after reviewing all of the evidence presented, she determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 52). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work.  (Tr. 53-54).  With regard to Plaintiff's adjustment disorder, the ALJ found Plaintiff was able to do detailed but not complex work.  (Tr. 54). With the help of a vocational expert, the ALJ determined Plaintiff could perform other work as a photographer finisher, a retail marker, and a stock checker of apparel.  (Tr. 57-58).

Plaintiff then requested a review of the hearing decision by the Appeals Council which denied that request on June 23, 2009.  (Tr. 1-4).  Subsequently, Plaintiff filed this action.  (Doc. 1).  This case is before the undersigned pursuant to the consent of the parties. (Doc. 4).  Both parties have filed appeal briefs, and the case is now ready for decision.  (Docs. 8, 9).

## II.    Evidence Presented:

At the administrative video hearing before the ALJ on April 21, 2009, Plaintiff testified she was fifty-two years of age and obtained a ninth grade education.  (Tr. 21).  Plaintiff testified that she later earned her general equivalency diploma.  (Tr. 21). The record reflects Plaintiff's past relevant work consists of work as a quality control tester, and a living skills instructor. (Tr. 21-24, 152).

-2-

Dr. Leong, a non-examining medical expert, also testified at the administrative hearing. (Tr. 15-19). Dr. Leong testified the record reflected Plaintiff's complaints of low back and neck pain which were documented by x-rays and a MRI. Based on the medical evidence, including a discussion of the x-rays and MRI of Plaintiff's spine, Dr. Leong testified Plaintiff would be able to lift twenty pounds occasionally, ten pounds frequently; to sit, stand and walk six hours each in an eight-hour work day; and to occasionally stoop, crawl and crouch. (Tr. 19). Dr. Leong testified Plaintiff did not have any handling or fingering limitations. (Tr. 19).

The record reflects that prior to her alleged onset date, Plaintiff sought treatment for an epigastric hernia repair, numbness in her hands, back pain, neck pain, elbow pain, twitching in her legs, and carpal tunnel syndrome of the right wrist.

The medical evidence during the relevant time period reflects the following. On September 17, 2007, Plaintiff entered the Collom & Carney Clinic complaining of pain, swelling and redness in her left ankle and foot for the past four days. (Tr. 203). Dr. David E. McKay noted Plaintiff thought that it was gout even though she had never had gout in the past. Plaintiff reported she drank two beers a day. Dr. McKay recommended no alcohol consumption. Dr. McKay noted Plaintiff was limping and that an x-ray of Plaintiff's left ankle did not show any acute changes. (Tr. 233). After examining Plaintiff, Dr. McKay diagnosed Plaintiff with mild cellulitis and recommended Plaintiff keep her foot elevated as much as possible. Plaintiff was started on Bactrium, given Darvocet N 100 and instructed to refrain from prolonged standing and walking.

On January 10, 2008, Plaintiff underwent a consultative General Physical Examination performed by Dr. Michael C. Young. (Tr. 273-279). Plaintiff reported neck pain secondary to

-3-

degenerative disease; constant lower back pain; self diagnosed gout; arthritis or generalized joint pain; and carpal tunnel syndrome on the right. Plaintiff's medication consisted of Darvocet N 100. Plaintiff denied respiratory or heart problems. Plaintiff reported she could walk one-half of a mile before her back would hurt.  Plaintiff denied any psychiatric problems.

Dr. Young noted Plaintiff had full range of motion of her cervical and lumbar spine. (Tr. 276).  Dr. Young noted Plaintiff had a normal straight-leg raise test with no muscle spasm. Plaintiff exhibited full range of motion in her extremities.  Dr. Young noted Plaintiff did not have any joint abnormalities, deformities, instability, ankylosis or contractures. Dr. Young noted Plaintiff did not have any muscle weakness or atrophy.  Plaintiff had a normal gait and coordination and no sensory abnormalities were noted.  Upon a limb function evaluation, Dr. Young  reported Plaintiff was able to hold a pen and write; to touch fingertips to palm; to grip one hundred percent and equal; to oppose thumb to fingers; to pick up a coin with each hand; to stand and walk without assistive devices; to walk on heel and toes; and to squat and arise from a squatting position.

Dr. Young also reviewed x-rays of Plaintiff's right knee and spine. Plaintiff's right knee x-ray revealed a well maintained joint space; a properly positioned patella; and overall osteoporotic bones. Plaintiff's cervical spine x-ray revealed some significant degenerative changes at C5-C6 with complete loss of her normal lordotic curve; some lipping of the anterior portion of C5-C6; and loss of disc space at C5-C6. Plaintiff's lumbar spine x-ray revealed a complete loss of the disc space between L5 and S1; and some lipping of the vertebral bodies of L2, L3 and L5.  Dr. Young diagnosed Plaintiff with degenerative disc disease; neck pain secondary to degenerative disc disease; back pain secondary to degenerative disc disease; post-op

-4-

c-section; post-op hernia repair; tobacco addiction; and osteoporosis.  Dr. Young stated "Ms. Hood was able to undress and re-dress herself. She was able to get on and off the exam table unassisted."

On January 12, 2008, Dr. David L. Hicks, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; could occasionally climb, balance, stoop, kneel; could frequently crouch and crawl; and that manipulative, visual, communicative or environmental limitations were not evident. (Tr. 283-290)**.**  After reviewing all the evidence, Dr. Jim Takach affirmed Dr. Hicks' findings on March 4, 2008. (Tr. 314).

On January 28, 2008, Plaintiff was seen at the Medical Park Hospital complaining of degenerative disc disease in her neck following a knot removal, carpal tunnel syndrome in her right wrist, back pain, right knee pain due to no ligaments, and sleep disturbance due to pain.[2] (Tr. 292).  Plaintiff reported she was tired all of the time and was in constant pain.  Plaintiff reported sometimes she wanted to take a gun and shoot herself. The examiner noted Plaintiff complained of pain in her back with flexion; and pain in her extremities with range of motion, particularly in the right knee.  Plaintiff was diagnosed with depression.

On March 6, 2008, Plaintiff underwent a consultative Mental Diagnostic Evaluation performed by Betty J. Feir, Ph.D.  (Tr. 315-).  Dr. Feir noted Plaintiff was diagnosed with depression by her medical doctor due to her reports of constant pain and feelings of hopelessness

---

[2]The Court notes the medical records from Medical Park Hospital are difficult to read.

and helplessness as a result of her pain.  Plaintiff reported she had concerns about taking a medication for depression because she did not know she was depressed. Plaintiff then reported she had experienced depression for several years.  Plaintiff reported she was able to take care of her personal hygiene needs on a daily basis without assistance; to do housework; and to manage her household.  Plaintiff reported her son helped her a lot. Plaintiff reported she had a driver's license and was able to drive.  Plaintiff reported after her last job in 2006, she went back to school but then began having severe arthritis pain and became physically unable to work. Plaintiff reported she had been diagnosed with fibromyalgia. After evaluating Plaintiff, Dr. Feir diagnosed Plaintiff with an Adjustment Disorder with Anxiety and Depression and gave her a Global Assessment of Functioning score of 60.

With regard to adaptive functioning, Dr. Feir noted Plaintiff indicated she could take care of her personal needs; to do dishes, laundry, sweep, mop and take out the trash; to manage money and pay bills on time when she had the resources; to count change from a dollar; to drive a car; to administer her own medication; and to shop independently. Dr. Feir reported Plaintiff appeared to isolate herself by choice and that she was able to interact appropriately with Plaintiff during the evaluation.  Dr. Feir noted Plaintiff indicated she started to have problems focusing and concentrating.  Dr. Feir indicated Plaintiff seemed to concentrate and comprehend effectively during the interview; however, Dr. Feir noted it was a quiet environment with no distractions. Dr. Feir noted Plaintiff's persistence appeared intact and Plaintiff was able to answer questions and stay with tasks when requested.  Dr. Feir opined Plaintiff was open and honest during the interview.

-6-

On March 17, 2008, Dr. Jerry R. Henderson, a non-examining medical consultant, reviewed the record and opined Plaintiff did not have a severe mental impairment. (Tr. 323).

Medical Park Hospital notes dated August 1, 2008, report Plaintiff complained of back pain and a lack of energy. (Tr. 325). The examiner noted Plaintiff indicated her back pain was different than usual in that it was more "aching" and worsened with back movement. The examiner also noted Plaintiff reported fatigue for the past week and an onset of dysuria that morning. Upon examination of Plaintiff, the examiner noted Plaintiff was tender in her SI joints bilaterally. No edema was present. Plaintiff was diagnosed with back pain and a possible urinary tract infection.

Medical Park Hospital notes dated January 9, 2009, report Plaintiff complained of a lack of appetite for the past three days, diarrhea, a head cold, a bad cough and dizziness. (Tr. 340). Dr. D.E. Goins also noted Plaintiff had chronic back and neck pain, arthritis in multiple joints, painful knees, carpal tunnel syndrome of the right wrist and peripheral neuropathy-sciatica. Dr. Goins noted Plaintiff had pain with range of motion of her left shoulder; back pain with flexion; and a stiff neck with range of motion. Plaintiff was diagnosed with bronchitis and degenerative disc disease.

On January 9, 2009, Dr. Goins also completed a Medical Assessment of Ability to Perform Work-Related Activities (Physical). (Tr. 337). Dr. Goins opined Plaintiff could occasionally lift and/or carry up to ten pounds, rarely up to twenty pounds; could sit three hours in an eight-hour workday; could stand and/or walk two hours out of an eight-hour workday; and could occasionally simple grasp, fine manipulate, handle objects, feel objects, push, pull, operate controls and reach. Dr. Goins opined Plaintiff could never climb, balance, stoop, crouch, kneel

or crawl; and that Plaintiff should avoid all exposure to heights and only have moderate exposure to moving machinery.

Medical Park Hospital notes dated February 16, 2009, report Plaintiff complained of numbness in her left arm and chest pain. (Tr. 339). Dr. Goins noted Plaintiff had neck pain with range of motion and that Plaintiff was tender over the SI joints. Dr. Goins noted that an EKG was normal. Plaintiff was diagnosed with panic attacks.

## III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v.

-8-

Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §§ 404.1520, 416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

IV.    **Discussion:**

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Defendant contends the record supports the ALJ's determination that Plaintiff was not disabled during the relevant time period of November 1, 2006, through May 19, 2009.

A.    **Subjective Complaints and Credibility Analysis:**

-9-

We first address the ALJ's assessment of Plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in Polaski, and conclude there is substantial evidence supporting her determination that Plaintiff's complaints were not fully credible.  The testimony presented at the hearing, as well as, the medical evidence contained in the record are inconsistent with Plaintiff's allegations of disability.

With regard to Plaintiff's alleged back and neck problems, the ALJ found that while Plaintiff may indeed have some limitations, the evidence did not support a finding of disability. A review of the evidence reveals Plaintiff only sought treatment for this pain on four occasions during the relevant time period.  At each visit Plaintiff's doctor opted to treat Plaintiff's pain conservatively with medication. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding fact that physician prescribed conservative treatment weighed against Plaintiff's subjective

-10-

complaints).  The ALJ also called a medical expert at the administrative hearing who explained the results of Plaintiff's x-rays and MRI and opined that Plaintiff should be able to perform light work activities despite her back and neck impairments.  Furthermore, in January of 2008, Dr. Young noted Plaintiff had a full range of motion of her spine and extremities.  Dr. Young also noted Plaintiff was able to undress and re-dress herself and that Plaintiff was able to get on and off the exam table unassisted. Thus, while Plaintiff may indeed experience some degree of pain due to her back and neck impairments, the Court finds substantial evidence of record supporting the ALJ's finding that Plaintiff does not have a disabling back or neck impairment.  See Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain)

Although Plaintiff testified that she did not seek consistent treatment due to the lack of finances, Plaintiff has put forth no evidence to show that she has sought low-cost medical treatment or been denied treatment due to her lack of funds.  Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship).  Furthermore, the evidence reveals Plaintiff continued to smoke and drink alcohol throughout the relevant time period.  Clearly, the money Plaintiff used to purchase cigarettes and alcohol could have been used to obtain treatment and medication.

With regard to Plaintiff's carpal tunnel syndrome, the ALJ found that there was no supportive objective evidence, such as diagnostic testing, during the relevant time period to show Plaintiff had carpal tunnel syndrome. (Tr. 55).  A review of the medical evidence reveals prior

-11-

to Plaintiff's alleged onset date, Plaintiff underwent nerve conduction studies of her upper extremities in August of 2006, which revealed mild abnormalities in the right median nerve consistent with carpal tunnel syndrome.[3] (Tr. 234). However, as addressed by the ALJ, in January of 2008, Plaintiff was found to have a bilateral hand grip one hundred percent of normal, to have the ability to pick up a coin with each hand, to hold a pen and write, and to touch fingertips to palm. Dr. Goins treatment notes also fail to reveal any limitations of Plaintiff's right upper extremity upon examination during the relevant time period. Furthermore, in January of 2009, Dr. Goins opined Plaintiff would be able to occasionally simple grasp, fine manipulate, handle objects, feel objects, push, pull and operate controls. Having reviewed the administrative record, we find that there is substantial evidence to support the ALJ's decision that Plaintiff's carpal tunnel syndrome was not so severe as to be disabling.

With regard to Plaintiff's alleged mental impairment, after reviewing all the evidence of record, the ALJ determined Plaintiff had mild restrictions of activities of daily living and social functioning; moderate difficulties with concentration, persistence and pace; and no episodes of decompensation for extended duration. A review of the record fails to reveal any mental health treatment until January 28, 2008, when Plaintiff reported to Dr. Goins that she was tired all of the time, was in constant pain, and sometimes wanted to shoot herself. Dr. Goins diagnosed Plaintiff with depression and prescribed medication. On March 6, 2008, Dr. Feir, a consultative examiner, noted Plaintiff's report that her doctor had prescribed medication to treat depression and that Plaintiff was concerned to take this medication because she did not know she was depressed. However, later during the same evaluation, Plaintiff reported to Dr. Feir that she had

---

[3] Studies of Plaintiff's left upper extremity were normal. (Tr. 234).

-12-

been depressed for years.  Dr Feir noted Plaintiff was able to take care of her personal hygiene

needs on a daily basis without assistance; to do housework; to manage her household; and to

drive. Based on her evaluation of Plaintiff, Dr. Feir diagnosed Plaintiff with an adjustment

disorder with anxiety and depression and gave Plaintiff a GAF score of 60.[4]  While the record

does show Plaintiff has been prescribed medication to treat depression,  there is no evidence that

Plaintiff sought treatment from a mental health professional on her own accord or through the

referral of another physician. Gowell v. Apfel, 242 F.3d 793 at 796 (holding that lack of evidence

of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim

of disability). Based on a review of the entire evidence of record, we find substantial evidence

to support the ALJ''s determination that while Plaintiff's adjustment disorder is severe, it is not

disabling.

        Plaintiff's reports concerning her daily activities are also inconsistent with her claim of

disability. In a Function Report dated October 27, 2007, Plaintiff indicated she was able to feed

and water her pets; to take care of her personal needs; to prepare simple meals; to slowly do

housework, including ironing, laundry, dusting, and making a bed; to go outside daily; to drive

a car; to shop for groceries; to handle money; and to talk on the telephone.  (Tr. 165-172).  In

March of 2008, Plaintiff reported to Dr. Feir that she was able to take care of her personal

hygiene needs on a daily basis without assistance; to do housework and to manage her

household.  This level of activity belies Plaintiff's complaints of pain and limitation and the

Eighth Circuit has consistently held that the ability to perform such activities contradicts a

---

[4]A GAF scores of 51-60 indicate "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers." Hudson ex rel. Jones v. Barnhart, 345 F.3d 661, 663 (8th Cir. 2003)(citations omitted).

Plaintiff's subjective allegations of disabling pain.  See Hutton v. Apfel, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability).

At the administrative hearing, upon questioning by the ALJ, Plaintiff testified that she received unemployment benefits during the first quarter of 2007.  (Tr. 32).  We note "[a] claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold himself out as available, willing and able to work." Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir.1991).

Therefore, although it is clear that Plaintiff suffers with some degree of pain, she has not established that she is unable to engage in any gainful activity.  See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).  Neither the medical evidence nor the reports concerning her daily activities support Plaintiff's contention of total disability.  Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**B.    RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and

-14-

others, and the claimant's own description of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  However, "it is the ALJ's function to resolve conflicts among 'various treating and examining physicians.'" Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

In finding plaintiff able to perform light work, the ALJ considered Plaintiff's subjective complaints, the medical records of her treating and examining physicians, and the testimony of a medical expert at the administrative hearing.  In making this RFC determination, the ALJ found Dr. Goins January of 2009 Medical Assessment of Ability to Perform Work-Related Activities indicating Plaintiff was able to do less than sedentary work was not entitled to significant weight because Dr. Goins appeared to base his opinion solely on Plaintiff's subjective complaints and not on objective tests. After reviewing all of the evidence of record, we find the ALJ properly addressed why she did not give controlling weight to Dr. Goins opinion.  See Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (ALJ may elect in certain circumstances not to give controlling weight to treating physician's opinion, as record must be evaluated as whole; for treating physician's opinion to have controlling weight, it must be supported by medically acceptable diagnostic techniques and not be inconsistent with other substantial evidence in the case record);

-15-

Dixon v. Barnhart, 353 F.3d 602, 606 (8th Cir. 2003) (medical opinions of a treating physician are normally accorded substantial weight, but they must not be inconsistent with other evidence on the record as a whole). We further find substantial evidence supports the ALJ's RFC determination.

### C.      Hypothetical Proposed to Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, we find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments do not preclude her from performing other work as a photographer finisher, a retail marker, and a stock checker of apparel. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### V.      Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 2nd day of June 2010.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-16-